UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
NO. 3:20-CR-297-MOC-DCK

| UNITED STATES OF AMERICA | |
|---|---|
| v. | **SENTENCING MEMORANDUM** |
| DAVID LEWIS | |

David Lewis is a committed Christian, husband, father of three, fourth-generation family farmer, and long-time public servant. In a roughly three-year window, he suffered two farm-debilitating hurricanes, thyroid cancer, and an explosion of responsibilities flowing from his effectively volunteer legislative position. To save the family farm from these confluent spirals, he made the single worst decision of his life: he temporarily diverted campaign funds to personal use before repatriating them to their normal end. As a result of this crime, he lost his political career, whatever pride a congenitally modest man carries,

and - in all likelihood- what little remains of the farm and his long-standing livelihood. This brief is submitted to suggest these existing penalties in addition to a non-custodial term of supervision amply serve the statutory purposes of sentencing.

### I. A Chronology of Consuming Events

David began service in the North Carolina House of Representatives in 2002. He ultimately rose to Chair of the House Rules Committee, which has major impact on the path of legislation before the chamber. As Chair, he was either a named defendant or relevant figure in a number of state and federal lawsuits challenging voter identification laws as well as state and federal redistricting efforts.

- October 2015: *Harris v. McCrory* went to trial challenging the legality of US House districts in North Carolina. This particular Court was a part of the three-judge panel. David was intimately involved in the case and defense counsel in that matter has indicated he was present for every day of trial.

- April 8, 2016: Doctors diagnose David with thyroid cancer

- April 11 -15, 2016: *Covington v. North Carolina* goes to trial challenging state legislative districts; David testified on or about April 13, 2015

- April 20, 2016: David suffers a complete thyroidectomy, resulting in complications and ongoing failure to produce calcium

- October 8, 2016: Hurricane Matthew makes landfall and causes massive crop destruction to the family farm

- October 2017: *Common Cause v. Rucho* goes to trial challenging US House districts; David was intimately involved in the defense and defense counsel has indicated he was present almost every day

- January - May 2018: David executes the bank transactions underlying the case *sub judice*

- September 14, 2018: Hurricane Florence makes landfall in North Carolina, again swamping the family farm

- November 13, 2018: *Common Cause v. Lewis* is filed in state court, resulting in complex federal removal issues and resulting in both Fourth Circuit and North Carolina Supreme Court decisions (David was the lead named defendant)

## II. David's Leadership Role Led to Litigation Obligations

As Rules committee chair and a vocal supporter of the state legislature's state and federal redistricting efforts, David was in many ways the public face of those efforts. Indeed, he was the lead named defendant in the above-mentioned *Common Cause* matter. While this

particular Court was a member of the panel that ruled against such efforts in *Covington,* the defense nonetheless believes the Court will recognize the immense time and attention it mandated from David to the detriment of his health and farming interests.

During the relevant period, state legislators are paid a little over $13,000 per year for their service. This does not meaningfully change no matter how many people or interest groups sue over the legislative acts. As a result, David's work as Rules chair during the period of time bulleted above was effectively a full-time, nearly unpaid position.

### III. Two Hurricanes Swamped the Family Farm

David's great-grandfather, Henry Haywood Hayes, started the family farming tradition in the early 1900s on land parcels along the Harnett and Sampson county borders the family still farms. In 1929, Hayes deposited the proceeds of his cotton crop in a bank which promptly failed as part of the Great Depression. As a result, their parcels devolved to a mere 20 acres and David's grandfather and father worked as sharecroppers.

The family farm was in full swing when David took over its leadership. Hurricane Matthew devastated agriculture in the relevant region. At the time Matthew made landfall, the most valuable, upper portion of the farm's tobacco was still in swamped fields generally unreachable due to concomitant road closures. David's status as an elected official mandates underwriting audits of any of the farm's crop insurance claims; this delays the slim proceeds and further accelerates the economic spiral the farm remains in today. David estimates operating losses in 2016 well above one-half million dollars. 2017 was a drought year. Hurricane Florence hit in 2018.

The farm's economic decline is demonstrable. It once had eleven full-time employees. It now has six. David recently had to lay off his sister due to economic distress. The farm's seasonal workforce has declined from a peak of thirty people to six.

At its peak, the farm operated 3,500 acres. It now farms 1,920 acres. It once owned and operated 13 tractors. They now have 3 and are forced to borrow such machinery from neighbors or rent equipment. Nonetheless, David has driven the adoption of agricultural and record-

keeping practices at the farm to manage chemical runoff, reduce water usage, and generally improve land stewardship.

## IV. The Section 1014 Conviction Amplifies the Struggle

Since resigning from the legislature, David has been solely focused on paying off, restructuring, and refinancing farm debt. His efforts have been complicated where not barred by the instant 18 U.S.C. § 1014 conviction: banks won't lend or work with a farmer convicted of lying to a bank. As a result, David's early momentum to save the farm from bankruptcy has slowed to a crawl. He has reluctantly begun to discuss the "B" word: bankruptcy. Indeed, he works full-time on these issues but hasn't drawn a paycheck since January of this year.

## V. David's Battle with Cancer Continues

Doctors diagnosed David with cancer on May 8, 2016 and directed him to have immediate surgery. David waited to testify in *Covington.* A second opinion confirmed the diagnosis roughly two days after his testimony. He had a thyroidectomy on May 20, 2016, but soon learned the cancer had damaged other glands such that he suffers permanent

calcium deficiency issues. He remains under care for his thyroid issues through Duke Hospital.

## VI. Appropriate Statutory Sentencing Analysis

The Court is well aware of the statutory factors and standards provided via 18 U.S.C. § 3553. The applicable guideline offense level, the government, and the defense all advocate for a custodial sentence after contemplating these and analogous factors. Nonetheless, the Presentence Investigation Report accurately addresses a statutory prohibition on probationary sentences tied to Class B felonies such as the instant, no-loss Section 1014 conviction.

David spent significant time in the USMS lock-up on the date of his plea hearing. He may well require further processing in the same facility following his sentencing hearing. The Court is at liberty to define these windows as satisfactory of any custodial mandate.

While a defendant found guilty of a Class B felony is not eligible for probation, 18 U.S.C. § 3561(a)(1), that statutory restraint does not go so far as preventing the Court from exercising its discretion and ordering a sentence typical of a Zone A offender. This prohibition against a

probationary sentence is not a mandate for a lengthy period of incarceration. "The guidelines do recognize a distinction between probation and a sentence of zero months imprisonment." *United States v. Elliot*, 971 F.2d 620, 621 (10th Cir. 1992) (citing U.S.S.G. § 5C1.1, comment. (n. 2)). A court that would otherwise order a probationary sentence in the absence of this statutory limitation, is still within its authority to craft a sentence akin to probation, without ignoring § 3561(a)(1).

Similar to § 3561(a)(1)'s prohibition against probation, § 5C1.1 of the U.S. Sentencing Guidelines states that when the defendant's "guideline range is in Zone D of the Sentencing Table, the minimum term shall be satisfied by a sentence of imprisonment." While this provision makes a sentence—at least one without a variance to a lower zone—of probation inapplicable, it does restrain the Court's due discretion to such an extent that a traditional term of imprisonment is required. Courts have exercised their sentencing discretion to fashion sentences similar to probation—while not running afoul of § 5C1.1—in cases with Zone D defendants charged with crimes much more serious than the one currently at bar. In fact, our sister circuit has held that a sentence of

merely one day, satisfied by the time spent in the custody of the U.S. Marshal's Service, followed by a period of supervised release was all that is required by § 5C1.1(f). *United States v. Stall*, 581 F.3d 276, 277−78 n.1 (6th Cir. 2009) ("To impose a term of supervised release, a sentence must include *at least a nominal prison sentence*.") (emphasis added) (citation omitted).

Our Circuit has acknowledged this application of the guidelines. *See United States v. Morace*, 594 F.3d 340, 351 n.10 (4th Cir. 2010) ("Without commenting on the propriety of such a sentence, we note that some district courts have begun sentencing defendants . . . to one day of incarceration followed by a term of supervised release.") (citing and comparing *United States v. Camiscione*, 591 F.3d 823 (6th Cir.2010) with *Stall*, 581 F.3d 276). Of more significant import, is the fact that the case cited by our Circuit showing a Zone D sentence of one day being vacated by our sister circuit, *Camiscione*, was reversed merely because the district court failed to explain how such a sentence advanced the goal of deterrence to an extent sufficient to satisfy that circuit. *See Camiscione*, 591 F.3d at 826. The Sixth Circuit did *not* vacate that sentence because it offended § 5C1.1(f). Rather, the Sixth Circuit

expressly noted that a sentence of one day, in the custody of the Marshalls, followed by a period of supervised release "was procedurally reasonable[.]" *Id.*

## VII. Conclusion

In a moment of multiple crises and facing the insolvency of his fourth-generation family farm, David Lewis misappropriated funds and repatriated them before his acts were detected. It was an act of desperation rather than greed. The defense submits the Court should recognize this was an aberrant act in an otherwise salutary half-century of life and impose a non-custodial sentence.

Respectfully submitted, this the 19 day of May, 2021.

<u>/s/Joshua Howard</u>
NC Bar No. 26902
Gammon, Howard & Zeszotarski, PLLC
115 ½ West Morgan Street
Raleigh, NC 27601
(919) 521-5878
Fax: (919) 882-1898
jhoward@ghz-law.com

/s/ *Gavin A. Bell*
GAVIN A. BELL
NC Bar No. 54759
Flannery | Georgalis, LLC
212 South Tryon Street, Suite 1410
Charlotte, NC 28281
O: (704) 949-2253
gbell@flannerygeorgalis.com

# CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the foregoing NOTICE through the electronic service function of the Court's electronic filing system, as follows:

William Stetzer

Acting United States Attorney

Western District of North Carolina

This the 19th day of May, 2021.

/s/ Joshua Howard

Counsel for Defendant
